UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**DOUGLAS SAMUEL BRAID,**

        **Plaintiff,**

**v.**                                                        **Case No:   6:13-cv-230-Orl-GJK**

**COMMISSIONER OF SOCIAL SECURITY,**

        **Defendant.**

## MEMORANDUM OF DECISION

Douglas Samuel Braid (the "Claimant"), appeals to the District Court from a final decision of the Commissioner of Social Security (the "Commissioner") denying his application for benefits. Doc. No. 1.  Claimant argues that the Administrative Law Judge ("ALJ") erred by: 1) not giving substantial weight to Dr. Estampador-Tan's medical opinions; and 2) failing to incorporate all of Claimant's impairments in the hypothetical to the Vocational Expert ("VE").   Doc. No. 13 at 13-20.  For the reasons set forth below, the Commissioner's final decision is **AFFIRMED**.

**I.      STANDARD OF REVIEW.**

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *accord Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

Where the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards*, 937 F.2d at 584 n.3; *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The District Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings); *Parker v. Bowen*, 793 F.2d 1177, 1180 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied). The District Court "'may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner].'" *See Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

## II.     ANALYSIS.

### A.  Dr. Estampador-Tan.

At the center of this dispute is whether the ALJ failed to provide good cause for rejecting Dr. Estampador-Tan's opinions. Doc. Nos. 13 at 13-18; 14 at 5-8. Weighing the opinions and findings of treating, examining, and non-examining physicians is an integral part of steps four and five of the ALJ's sequential evaluation process for determining disability. The Eleventh Circuit recently clarified the standard the Commissioner is required to utilize when considering medical opinion evidence. In *Winschel v. Commissioner of Social* Security, 631 F.3d 1176, 1178-79 (11th Cir. 2011), the Eleventh Circuit held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the

claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it *and the reasons therefor*. *Id*. (citing 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2); *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987)).  "'In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence.'" *Winschel*, 631 F.3d at 1179 (quoting *Cowart v. Schwieker*, 662 F.2d 731, 735 (11th Cir. 1981)).

Absent good cause, the opinion of a treating physician must be accorded substantial or considerable weight.  *Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988).

> Good cause exists when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records."

*Johnson v. Barnhart*, 138 F. App'x 266, 269 (11th Cir. 2005) (quoting *Phillips*, 357 F.3d at 1240-41).  Thus, good cause exists to give a treating physician's opinion less than substantial weight when the opinion is not bolstered by the evidence, evidence supports a contrary finding, or the opinion is conclusory or inconsistent with the physician's medical records.

Claimant began treatment with Dr. Estampador-Tan on August 18, 2008.  R. 833.  During that initial visit, Claimant reported experiencing severe neck and back pain.  R. 833.  Based on Claimant's medical history, reported pain, and a physical examination, Dr. Estampador-Tan assessed Claimant with cervicobrachial pain, R/O radiculopathy, right adhesive capsulitis, low back pain syndrome, and chronic intractable pain.  R. 833.  Dr. Estampador-Tan prescribed Claimant Methadone, Ibuprofen, and Zanaflex.  R. 833.

Claimant continued to receive treatment from Dr. Estampador-Tan through April 14, 2011.  R. 833-47, 926-36.  Throughout Claimant's course of treatment with Dr. Estampador-Tan, Claimant consistently reported trouble with sleeping and neck and back pain, which ranged

between 6 and 10, with 10 being the worst.  R. 834-47, 926-36.  Likewise, many aspects of Dr. Estampador-Tan's treatment notes remained consistent throughout Claimant's treatment: Claimant's shoulder abduction was 110 degrees on the left and 70 degrees on the right (R. 834-47, 926-36); Claimant's level of pain varied depending on the activity he performed (R. 834-47, 926-36);[1] Claimant's "medications [were] effective without adverse or intolerable side effects" (R. 834-47, 926-36); and, Claimant was assessed with cervicobrachial pain, R/O radiculopathy, right adhesive capsulitis, insomnia, and low back pain syndrome (R. 834-47, 926-36).  In addition to these consistent observations and assessments, many of the treatment notes indicate that Claimant is doing well on the prescribed medication (R. 834-36, 39, 47, 926, 28, 31-32), or that his pain level is "fair to good" (R. 840, 934-5) or "stable" (R. 841-6).

On March 3, 2010, Dr. Estampador-Tan completed a physical RFC assessment.  R. 909-11.  In it, Dr. Estampador-Tan opined that Claimant can occasionally lift less than ten (10) pounds, stand and walk at least two (2) hours in an eight (8) hour workday, sit less than six (6) hours in an eight (8) hour workday, and has a limited ability to push and pull.  R. 909-10.[2]  With respect to postural limitations, Dr. Estampador-Tan opined that Claimant can occasionally kneel and stoop, but never climb, balance, crouch, or crawl.  R. 910.  With respect to manipulative limitations, Dr. Estampador-Tan opined that Claimant can frequently finger and feel, but occasionally reach and handle.  R. 910.[3]  With respect to environmental limitations, Dr. Estampador-Tan opined that Claimant's exposure to temperature extremes, dust, vibration, humidity, hazards, and fumes should

---

[1] Dr. Estampador-Tan's treatment records do not explain what activities cause Claimant the most pain.  *See* R. 834-47, 926-36.

[2] Despite being prompted to do so, Dr. Estampador-Tan did not opine about the nature and degree of Claimant's ability to push and pull.  *See* R. 910.

[3] Despite being prompted to do so, Dr. Estampador-Tan did not provide any explanation concerning Claimant's manipulative limitations.  *See* R. 910.

be limited. R. 911.[4] Dr. Estampador-Tan further opined that Claimant is unable to complete an eight (8) hour workday with normal breaks, and that he finds Claimant's allegations of pain, fatigue, and medication side effects to be credible. R. 911.

At step four of the sequential evaluation, the ALJ found that Claimant has an RFC to "perform sedentary work as defined in 20 CFR 404.1567(a) with the additional restrictions that [he] could climb occasionally . . . and frequent[ly reach overhead]." R. 22. In reaching this RFC, the ALJ provided a thorough and accurate discussion of Dr. Estampador-Tan's treatment notes. R. 24-5.[5] The ALJ recognized that Dr. Estampador-Tan was a treating physician, and therefore her opinions should be accorded controlling weight if they are well supported. R. 25. The ALJ, however, found that Dr. Estampador-Tan's opinions were not well supported, and assigned "little weight" to her opinions. R. 25. In doing so, the ALJ explained:

> During the relevant period, physical examinations have shown only chronic neck and back pain, tenderness with diffuse moderate spasms and decreased range of motion in the bilateral shoulders with abduction. A pulmonary function test demonstrated only mild obstructive ventilatory impairment. There was no significant response to bronchodilators or restrictive ventilatory impairment. His static lung volumes were unremarkable. Diffusion capacity was normal. His impairment was reasonably controlled with medications. In addition, treatment has been conservative and non-aggressive. Medication dosages were low and did not increase, suggesting symptoms are not particularly serious.

R. 25.

Claimant argues that the ALJ's decision to assign little weight to Dr. Estampador-Tan's opinions is not supported by substantial evidence because she mischaracterized Dr. Estampador-

---

[4] Despite being prompted to do so, Dr. Estampador-Tan does not explain what medical or clinical findings support his conclusions regarding Claimant's environmental limitations. *See* R. 911.

[5] Claimant does not challenge the accuracy of the ALJ's discussion of Dr. Estampador-Tan's treatment notes. *See* Doc. No. 13 at 13-18.

Tan's treatment records as only indicating chronic neck and back pain. Doc. No. 13 at 15-16. Claimant maintains that Dr. Estampador-Tan's treatment records reveal that he suffered from chronic and intractable neck and back pain. Doc. No. 13 at 15-16 (citing R. 833). As such, Claimant argues that the ALJ erred when she indicated that Claimant only suffered from chronic neck and pain, and consequently failed to articulate good cause to assign little weight to Dr. Estampador-Tan's opinions. Doc. No. 13 at 15-16. While Dr. Estampador-Tan initially assessed Claimant with "Chronic Intractable Pain" (R. 833), every subsequent treatment note is devoid of such an assessment. *See* R. 834-47, 926-36. Instead, each subsequent treatment note assessed Claimant with cervicobrachial pain, R/O radiculopathy, right adhesive capsulitis, insomnia, and low back pain syndrome. R. 834-47, 926-36. These treatment notes contain no mention or indication that Claimant's neck and back pain were intractable. R. 834-47, 926-36. Accordingly, the Court finds that the ALJ did not mischaracterize Dr. Estampador-Tan's treatment notes.

Next, Claimant argues that the ALJ's decision to assign little weight to Dr. Estampador-Tan's opinions is not supported by substantial evidence because Dr. Estampador-Tan's opinions are supported by Dr. Avila's treatment records, as well as his testimony. Doc. No. 13 at 17-18. Dr. Avila treated Claimant on eight (8) occasions between July 25, 2007 and May 15, 2008. R. 775-91. Dr. Avila's treatment notes are essentially consistent with Dr. Estampador-Tan's treatment notes, indicating that Claimant suffers from chronic neck and back pain, which is reasonably controlled with medication. *Compare* R. 775-91 *with* R. 834-47, 926-36. In light of this consistency and the ALJ's well-supported determination that Dr. Estampador-Tan's treatment notes contradict his opinions concerning Claimant's RFC, the Court finds that Dr. Avila's treatment notes do not support Dr. Estampador-Tan's RFC opinion. Likewise, the Court finds

Claimant's bald assertion that his testimony supports Dr. Estampador-Tan's opinions unavailing (*See* Doc. No. 13 at 17-18), since he does not challenge the ALJ's determination that his testimony concerning the intensity, persistence, and limiting effects of his symptoms was not credible (R. 24-6).

Having found Claimant's arguments unavailing, the Court finds that the ALJ provided good cause to assign little weight to Dr. Estampador-Tan's opinions. Dr. Estampador-Tan's opinions concerning Claimant's RFC primarily stem from Claimant's troubled sleep and neck and back pain. *See* R. 909-11. The ALJ, however, articulated numerous reasons why Dr. Estampador-Tan's opinions deserve little weight. R. 25. With respect to Claimant's troubled sleep, the ALJ found that the severity of that impairment did not rise to the level assessed by Dr. Estampador-Tan because: 1) a pulmonary function test demonstrated only mild obstructive ventilator impairment; 2) there was no significant response to bronchodilators or restrictive ventilatory impairment; 3) Claimant's static lung volumes were unremarkable; and 4) his diffusion capacity was normal. R. 25. With respect to Claimant's neck and back pain, the ALJ found that the severity of that impairment did not rise to the level assessed by Dr. Estampador-Tan because: 1) physical examinations revealed only chronic neck and back pain, moderate spasms, and decreased range of motion in the bilateral shoulders; 2) the pain was reasonably controlled with medication; 3) treatment for the pain was conservative; and 4) medication dosages were low and did not increase, suggesting Claimant's symptoms were not particularly serious. R. 25. Claimant does not challenge many of these reasons, and the Court finds that these reasons are supported by substantial evidence. *See* R. 828, 834-47, 926-36. Further, the Court finds that these reasons provide good cause to assign Dr. Estampador-Tan's opinions little weight. *See, e.g.*, *Rosario v. Comm'r of Soc. Sec.*, 490 F. App'x 192, 195 (11th Cir. 2012) (finding that inconsistency

of treating physician's opinions with his own findings and the overall medical evidence qualifies as good cause to assign little weight to physician's opinions).[6]  Accordingly, the Court finds that the ALJ's decision to assign little weight to Dr. Estampador-Tan's opinions is supported by substantial evidence.

### B. Step Two.

Claimant argues that the ALJ erred at step two of the sequential evaluation process because she failed to explain why his depression, including his disabling Global Assessment of Functioning ("GAF") scores, did not constitute a severe impairment.  Doc. No. 13 at 18.  Claimant was treated for depression at Park Place Behavioral Health Care between March 26, 2007 and May 11, 2009. R. 806-22.  Claimant was subsequently treated for depression by Dr. Makkena between February 19, 2010 and April 12, 2011.  R. 912-22.  During Claimant's treatment for depression, he was assessed with GAF scores ranging between 48 and 60.  R. 806-15, 17-18, 22, 918, 20.[7]

Claimant's argument is unavailing for two principle reasons.  First, the ALJ did not err at step two because she found that Claimant suffers from severe impairments of degenerative disc diseases, obesity, and right shoulder strain, and then proceeded to the next three steps of the sequential evaluation process.  R. 17-27.  In *Farrington v. Astrue*, Case No. 3:09-CV-94-J-TEM, 2010 WL 1252684, at *4 (M.D. Fla. Mar. 29, 2010), the Court explained:

> Articulation of the specific impairments included in the Step 2 finding, while preferable, however, is not essential for an adequate finding under the Regulations.  As the Eleventh Circuit has stated,

---

[6] In this circuit, "[u]npublished opinions are not considered binding precedent, but they may be cited as persuasive authority."  11th Cir. R. 36-2.

[7] GAF scores are used to report an individual's overall level of functioning.  Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. Text Revision, 2000).  A GAF of 41-50 indicates: "**Serious symptoms** (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) **OR any serious impairment in social, occupational, or school functioning** (e.g., no friends, unable to keep a job)."  *Id*. at 34 (emphasis in original).  A GAF score of 51-60 reflects: "**Moderate symptoms** (e.g., flat affect and circumstantial speech, occasional panic attacks) **OR moderate difficulty in social, occupational, or school functioning** (e.g., few friends, conflicts with peers or co-workers)."  *Id*. (emphasis in original).

> "the ALJ could not have committed any error at step two because he found that [the claimant] had a severe impairment or combination of impairments and moved on to the next step in the evaluation, which is all that is required at step two." *Council v. Barnhart*, 127 F. App'x 473 (Table), No. 04–13128, at 4 (11th Cir. Dec. 28, 2004); *see also Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987) (stating that the finding of any severe impairment is enough to satisfy the requirement of step two).

*Id*. Therefore, as long as an ALJ's decision demonstrates consideration of the combined effect of all of a claimant's impairments, and if the ALJ finds a severe impairment at step two, the ALJ satisfies the requirements of the regulations. *Id*. Here, the ALJ found severe impairments at step two, proceeded to the remaining steps, and, in determining the Claimant's residual functional capacity, stated that she "has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence[.]" R. 22. Accordingly, the ALJ satisfied the requirements of the regulations.

Second, the ALJ provided a detailed and accurate discussion as to why Claimant's depression does not constitute a severe impairment. R. 17-21. Specifically, the ALJ discussed Claimant's treatment records from Park Place Behavioral Health Care and Dr. Makkena, as well as opinion evidence from Dr. Makkena (R. 920-22) and two non-examining state agency psychologists, Dr. Butler (R. 878-90) and Dr. Prickett (R. 895-907). R. 17-19. Ultimately, the ALJ assigned little weight to the opinions of Dr. Butler, Dr. Prickett, and Dr. Makkena. R. 19-20.[8] Claimant does not challenge any aspect of the ALJ's discussion of the medical evidence regarding his depression or the weight assigned to the foregoing opinions. *See* Doc. No. 13 at 18-19. Accordingly, the Court finds that the ALJ did adequately explain why Claimant's depression did not constitute a severe impairment.

---

[8] Dr. Butler and Dr. Prickett both opined that there was insufficient evidence to assess Claimant's impairments and the effects of his impairments on his ability to function. R. 890, 907.

As for Claimant's GAF scores, the Court recognizes that the ALJ did not expressly address those scores when considering whether Claimant's depression is a severe impairment. *See* R. 17-21. Courts in this district, however, recognize that GAF scores are of "questionable value in determining an individual's mental functional capacity." *Wilson v. Astrue*, 653 F.Supp.2d 1282, 1293 (M.D. Fla. 2009) (quoting *Gasaway v. Astrue*, Case No. 8:06-CV-1869-T-TGW, 2008 WL 585113, at *4 (M.D. Fla. Mar. 3, 2008)).[9] Given their questionable value, courts have generally declined to find reversible error where an ALJ does not expressly discuss a claimant's GAF scores. *See, e.g.*, *Bailey v. Astrue*, Case No. 3:09-cv-383-J-JRK, 2010 WL 3220302, at *8-9 (M.D. Fla. Aug. 13, 2010) (finding the ALJ's failure to mention Plaintiff's GAF scores did not require remand); *Smith v. Comm'r of Soc. Sec.*, Case No. 6:10-cv-1478-Orl-31KRS, 2011 WL 6217110, at *6-7 (M.D. Fla. Nov. 1, 2011) *report and recommendation adopted*, 2011 WL 6217124 (M.D. Fla. Dec. 14, 2011), *aff'd*, 486 F. App'x 874 (11th Cir. 2012) (stating "[b]ecause the ALJ indicated that he carefully reviewed the records before him, and there is no indication that he overlooked or misconstrued any GAF score, I recommend that the Court find that the ALJ did not err by failing to include the GAF scores in his decision or by failing to state the weight he gave to each score."); *see also Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (there is no rigid requirement that an ALJ specifically refer to every piece of evidence in the record). In light of the ALJ's thorough discussion of the medical evidence pertaining to Claimant's treatment of his depression, there is no indication that she overlooked or misconstrued any of Claimant's GAF scores. *See* R. 17-21. Accordingly, consistent with the cases cited above, the Court finds that the ALJ did not error by failing to expressly address Claimant's GAF scores in her decision.

---

[9] The Court notes that the most recent edition of the Diagnostic and Statistical Manual of Mental Disorders does not utilize the GAF scale, noting that it was recommended "the GAF be dropped . . . for several reasons, including its conceptual lack of clarity . . . and questionable psychometrics in routine practice." Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 16 (5th ed. 2013).

In sum, the Court finds that the ALJ complied with the regulations, adequately explained why Claimant's depression did not constitute a severe impairment, and did not err by failing to expressly address Claimant's GAF scores in her decision. Accordingly, the Court finds that the ALJ's determination that Claimant's depression is a non-severe impairment is supported by substantial evidence. R. 17-21.

### C. Hypothetical to the VE.

Claimant contends the ALJ's hypothetical questions to the VE failed to contain all of Claimant's functional impairments. Doc. No. 13 at 18-20. Once a claimant proves that he or she can no longer perform his or her past relevant work, as is the case here (R. 26), the burden shifts to the Commissioner "to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform." *Jones v. Apfel*, 190 F.3d 1224, 1228-30 (11th Cir. 1999) (quoting *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)). One of the methods used to show that the claimant can perform other jobs is through the testimony of a VE. *Id*. at 1229. In the Eleventh Circuit, the ALJ is required to pose hypothetical questions which are accurate and which include all of a claimant's limitations. *Pendley v. Heckler*, 767 F.2d 1561, 1563 (11th Cir. 1985). Where the ALJ relies significantly on the testimony of a VE to find that other jobs exist in the national economy that a claimant can perform, but fails to include all the claimant's limitations in the hypothetical question, the Eleventh Circuit has held that the final decision is not supported by substantial evidence. *Id*. at 1562 (quoting *Brenem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980)).[10] Once the Commissioner, by and through the ALJ, demonstrates the existence of other work in the economy that the claimant can perform, the burden shifts back

---

[10] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

to the claimant to prove that he or she is unable to perform the jobs identified by the VE. *Jones*, 190 F.3d at 1228 (citing 20 C.F.R. § 416.920).

### 1. Depression.

Claimant argues that the ALJ erred by not including his depression in her hypothetical to the VE. Doc. No. 13 at 19. Claimant, however, cites no medical or opinion evidence indicating that his depression results in functional limitations. *See* Doc. No. 13 at 19. The Court, however, notes that Dr. Makkena did complete a mental RFC assessment, in which he opined that Claimant has poor concentration, hallucinations, poor sleep, talks to himself, is forgetful, and feels sad, hopeless, and helpless. R. 922. The ALJ, however, assigned little weight to Dr. Makkena's opinions. R. 19. The ALJ explained in detail the basis for doing so. R. 19-20. Claimant does not challenge any of the reasons the ALJ gave for assigning little weight to Dr. Makkena's opinions. *See* Doc. No. 13. Accordingly, the Court finds that the ALJ articulated good cause for assigning little weight to Dr. Makkena's opinions. Since the ALJ properly rejected Dr. Makkena's opinions and the record contains no other evidence concerning functional limitations stemming from Claimant's depression, the Court finds that the ALJ did not error by omitting Claimant's depression from her hypothetical to the VE. *See Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004). (An ALJ is "not required to include findings in the hypothetical that the ALJ ha[s] properly rejected as unsupported.").

### 2. Overhead Reaching.

Claimant argues that the ALJ failed to explain why he was limited to frequent overhead reaching, and that such a limitation is not supported by the record. Doc. No. 13 at 19. In light of Dr. Estampador-Tan's opinion that Claimant is limited to occasional reaching (R. 910), the Court construes Claimant's argument as suggesting that the ALJ should have limited him to

occasional reaching. However, as discussed above, the ALJ properly assigned little weight to Dr. Estampador-Tan's opinions, and therefore was not required to include any of Dr. Estampador-Tan's opinions in her hypothetical to the VE. *Crawford*, 363 F.3d at 1161. Further, Claimant cites no other medical or opinion evidence demonstrating that he is incapable of frequently reaching overhead. *See* Doc. No. 13 at 19. Absent such a showing, the Court finds that the ALJ did not error by limiting Claimant to frequent overhead reaching and including that limitation in her hypothetical to the VE. *See Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) ("[T]he claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim.") (citing 20 C.F.R. § 416.912(a), (c)).

### 3. Side Effects.

Claimant argues that the ALJ erred by not including the side effects of his medications in her hypothetical to the VE. Doc. No. 13 at 19-20. In determining whether a claimant's impairment(s) limit his or her ability to work, the ALJ considers, among other things, the claimant's subjective symptoms, which include, the "type, dosage, effectiveness, and side effects of any medication . . . taken to alleviate . . . pain or other symptoms[.]" 20 C.F.R. §§ 404.1529(c)(3)(iv), 416.929(c)(3)(iv). Claimant bears the burden of introducing evidence supporting a claim that his symptoms, including any medication side effects, render him or her disabled. *Walker v. Comm'r of Soc. Sec.*, 404 F. App'x 362, 366 (11th Cir. 2010) (citing *Ellison*, 355 F.3d at 1276).

At the hearing, Claimant, who was represented, testified that his medications caused him to be short tempered, dizzy, incoherent, shake, nauseous, and forgetful. R. 47-9. Claimant also reported similar symptoms to Dr. Avila on several occasions, as well as addition side effects, including fatigue, anxiety, hearing and vision problems, numbness, tingling, and weakness. R.

779, 81, 84, 88. Aside from Claimant's reports of side effects, Claimant cites no medical or opinion evidence indicating that the side effects alone, or in combination with his other impairments, are severe enough to be disabling. See Doc. No. 13 at 19-20; *Walker*, 404 F. App'x at 366. Further, the ALJ found that Claimant's subjective complaints "concerning the intensity, persistence and limiting effects of [his] symptoms," which encompass Claimant's testimony about his side effects, "are not credible to the extent they are inconsistent with the above [RFC] assessment." R. 24-6. In support of this finding, the ALJ indicated that some treatment records contained no mention of side effects (R. 20) while others indicated that Claimant's medications do not cause any adverse or intolerable side effects (R. 24-5 (citing R. 834-47, 926-36)). Claimant does not challenge the ALJ's credibility determination (*See* Doc. No. 13), and the Court finds that the ALJ articulated good cause for discrediting Claimant's testimony and that her reasons for doing so are supported by substantial evidence. See *Foote*, 67 F.3d at 1561-62 (reviewing court will not disturb credibility finding with sufficient evidentiary support). Accordingly, the Court finds that the ALJ did not error by omitting Claimant's medication side effects from her hypothetical to the VE. *Crawford*, 363 F.3d at 1161.

**4. Fatigue.**

Claimant argues that the ALJ erred by not including his fatigue in her hypothetical to the VE. Doc. No. 13 at 19-20. At the hearing, Claimant testified that he is only capable of two or three hours of sleep, which results in daytime fatigue. R. 53. Claimant also reported fatigue as a result of trouble sleeping to Dr. Avila (R. 775) and Dr. Estampador-Tan (R. 834-47, 926-36). Aside from Claimant's reports of fatigue, Claimant cites no medical or opinion evidence indicating that his fatigue alone, or in combination with his other impairments, results in any functional limitations. *See* Doc. No. 13 at 19-20. Once again, the ALJ found that Claimant's subjective

complaints "concerning the intensity, persistence and limiting effects of [his] symptoms," which encompass Claimant's testimony about his fatigue, "are not credible to the extent they are inconsistent with the above [RFC] assessment." R. 24-6.  In support of this finding, the ALJ noted that Claimant underwent an examination at the Central Florida Sleep Center, and that a pulmonary function test demonstrated mild obstructive ventilatory impairment, no significant response to bronchodilators or restrictive ventilatory impairment, unremarkable static lung volumes, and a normal diffusion capacity.  R. 24 (citing R. 828).  Claimant does not challenge the ALJ's credibility determination (*See* Doc. No. 13), and the undersigned finds that the ALJ articulated good cause for discrediting Claimant's testimony and that her reasons for doing so are supported by substantial evidence.  *See Foote*, 67 F.3d at 1561-62.  Accordingly, the Court finds that the ALJ did not error by omitting Claimant's fatigue from her hypothetical to the VE.  *Crawford*, 363 F.3d at 1161.

### III.   CONCLUSION.

For the reasons stated above, it is **ORDERED** that:

1. The final decision of the Commissioner is **AFFIRMED**;

2. The Clerk is directed to enter judgment in favor of the Commissioner and to close the case.

**DONE and ORDERED** in Orlando, Florida on March 18, 2014.

_____
GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record

The Court Requests that the Clerk
Mail or Deliver Copies of this order to:

The Honorable Janet Mahon
Administrative Law Judge
c/o Office of Disability Adjudication and Review
3505 lake Lynda Dr.
Suite 300
Orlando, FL 32817-9801